CADES SCHUTTE LLP

MILTON M. YASUNAGA        3058-0
ELIJAH YIP                          7325-0
ALLISON MIZUO LEE          7619-0
1000 Bishop Street, Suite 1200
Honolulu, HI  96813-4212
Telephone:  (808) 521-9200
FAX:  (808) 521-9210
Email:  myasunaga@cades.com

Attorneys for Plaintiff
SHRED-IT AMERICA, INC.

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHRED-IT AMERICA, INC., <br><br> Plaintiff. <br><br> v. <br><br> EDWARD MACNAUGHTON; SIH, LLC; and ACCESS INFORMATION MANAGEMENT OF HAWAII, LLC, <br><br> Defendants. | CIVIL NO. 1:10-cv-00547-DAE-KSC <br><br> AMENDED COMPLAINT; SUMMONS; CERTIFICATE OF SERVICE |

### <u>SUMMARY OF THE ACTION</u>

1.      Plaintiff Shred-it America, Inc. ("Shred-it") is the franchisor of the well-known mobile document destruction businesses bearing the Shred-it® name. Defendant Edward MacNaughton and his company, defendant SIH, LLC

(collectively, the "Franchisee Defendants"), have owned and operated the Hawaii franchise in the Shred-it system since 1998, serving Hawaii branches of Shred-it's national accounts, as well as local accounts developed and serviced under the SHRED-IT® name.   To induce Shred-it to grant the franchise to them, the Franchisee Defendants made a number of promises to Shred-it about what would take place during and after the relationship between them.   Since 1998, these defendants have consistently reaped the benefits of being a franchisee of Shred-it, utilizing its brand, trademark, equipment, resources, attending conferences to obtain its thinking, and working with members of corporate offices to grow its business.   SIH, LLC also continued to pay royalties and generally adhered to its obligations as a franchisee, until now.

2.      Recently, the Franchisee Defendants breached their commitments in the Franchise Agreement by arranging to sell assets of the franchised business, which was one of only three companies known to provide shredding services in Hawaii, to a competing company, the Access Information Management organization.   That competing organization formed a new entity named Access Information Management of Hawaii, LLC ("Access").   The sale of assets, which occurred without the consent of Shred-it and in derogation of Shred-it's rights, leaves Shred-it locked out of the Hawaii market and only two firms known to be providing mobile document destruction in the state.

3.     Based on the Franchisee Defendants' default and breach, the Franchise Agreement became subject to termination immediately, pursuant to its terms.

4.     Upon the termination of the Franchise Agreement, the Franchisee Defendants are contractually required to return the confidential and proprietary information, customer lists, materials, and equipment (including the unique shredding trucks) used as a Shred-it franchisee, and to sign the proper documents to turn over to Shred-it the telephone numbers associated with their Shred-it business.  The Franchisee Defendants also are required by contract to make the formerly franchised location accessible and available to Shred-it to operate.  The Franchisee Defendants have failed to comply with these obligations, instead purporting to sell their assets to Access so that it becomes one of only two such firms serving Hawaii, while doing so using the proprietary trucks and customer lists, and misusing the Shred-it® name, all causing ongoing harm to Shred-it and the public.  Access has been calling on Shred-it's customers (except for its national accounts, which are being left unserved), using the assets, confidential information, name, and trade secrets that rightfully belong to Shred-it.

## THE PARTIES

5.     Plaintiff Shred-it America, Inc. is a Nevada corporation.

6.     Upon information and belief, defendant SIH, LLC is a limited liability company, organized under the laws of the State of Hawaii.

7.     Upon information and belief, defendant MacNaughton is a citizen of the State of Hawaii.

8.     Upon information and belief, defendant Access is a limited liability company formed September 16, 2010, under Delaware law.

## JURISDICTION AND VENUE

9.     Federal question jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1337, 1338, and 15 U.S.C. § 4, and supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367(a), because this action also is brought under the federal Lanham Act, 15  U.S.C. § 1051, *et seq*. and also is a private civil antitrust suit as allowed under federal law, 15 U.S.C. § 26, for violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18.

10.    The Defendants are subject to personal jurisdiction in Hawaii, as they are citizens of Hawaii, reside in Hawaii, and/or operate their businesses in Hawaii.

11.    A substantial part of the events giving rise to Shred-it claims occurred within the District of Hawaii, and the Defendants are subject to personal jurisdiction in this district, providing proper venue pursuant to 28 U.S.C. § 1391.

## CONDUCT GIVING RISE TO VIOLATIONS OF LAW

**A.     The Shred-it® Business and Franchise Agreement**

12.     Shred-it is the franchisor of commercial shredding businesses.  Shred-it businesses provide customers with a secure and inexpensive means of destroying and disposing of confidential documents.  Shred-it's Hawaii franchise was one of several Shred-it® businesses (both franchised and company-owned) which have operations in all major cities in the United States and Canada.

13.     Shred-it customers are provided locked document receptacles, known as consoles, which are used to collect documents the customers wish to have shredded.  When the customer requests disposal of these documents, a Shred-it customer service representative drives a truck equipped with shredding equipment to the customer's office.  Documents are brought from the console in the client's office to the Shred-it truck for shredding.  Once they are shredded, the documents are recycled.

14.     On or about July 27, 1998, Shred-it entered into a written Franchise Agreement with MacNaughton under which it granted him the exclusive right to operate a Shred-it® business in Hawaii.

15.     As further inducement for Shred-it to enter into the Franchise Agreement for Hawaii in 1998, defendant MacNaughton entered into a separate "Undertakings of General Manager" agreement.  Through that agreement,

5

MacNaughton guaranteed to Shred-it that he would make full and prompt performance of his company's obligations to Shred-it under the Franchise Agreement.  Hereinafter, the personal promises of MacNaughton are referenced as "the Undertaking."

16.     Pursuant to Section II.A of the Franchise Agreement, the term of the agreement was 10 years.  It thus expired in 2008.

17.     From the expiration of the Franchise Agreement until this month, the parties have agreed to extend the Franchise Agreement by its terms on a month-to-month basis while they have negotiated the terms of their future relationship.  The negotiations have centered on renewing the franchise agreement on terms to be agreed, or the possible purchase of the Franchisee Defendants' business or assets.  During that period of time, both parties continued to adhere to the terms of the Franchise Agreement.  The Franchise Defendants continued to use the Shred-it brand, resources, proprietary and confidential information, trade secrets, knowledge, and personnel for assistance.  They also paid royalties.

18.     As recently as the summer of 2010, Shred-it and the Franchisee Defendants were communicating about a potential purchase by Shred-it.  At that time, MacNaughton asked simply that Shred-it put those discussions on hold (but not to call them off) due to a health issue involving his wife.  Shred-it honored MacNaughton's request to put the negotiations on hold while MacNaughton and

his wife dealt with her health issue, and Shred-it did not bring up the matter again in deference to MacNaughton's personal request.  As recently as September 15, 2010, MacNaughton acted as though he was still a Shred-it franchisee, and he declined to participate in a Shred-it event set for the week of September 20, citing only "distance for travel."  As they had since July 2008, the parties continued to operate under the Franchise Agreement, as extended by mutual consent, in the interim.

19.    Suddenly, on September 22, 2010, a lawyer for defendant Access wrote to Shred-it out of the blue and claimed that his client "recently acquired certain operating assets from your former franchisee, Shred-it Hawai'i". Shred-it still has not received any communication from the Franchisee Defendants confirming or denying their transaction with Access, even though Shred-it wrote to the Franchisee Defendants on September 23, 2010, in response to the shocking letter Shred-it received from counsel for Access.

20.    As of September 23, 2010, the Shred-it telephone number previously used by the Franchisee Defendants was answered "Access Information Management now servicing Shred-it Hawaii clients."

21.    In communications to Shred-it customers, Access stated that "Shred-it Hawaii has ceased all operations in Hawaii," that there would be a "seamless transition" to Access, that "we will continue to provide secure, mobile and plant

based document destruction services," and that "you will receive the same heroic service from an outstanding local team."  Those communications were signed by the same Ed MacNaughton the customers knew to have owned the Shred-it business in Hawaii.

22.    Meanwhile, on information and belief, the Franchisee Defendants simply stopped operating their Shred-it franchise upon the sale of assets and customer lists to Access, without further notice or warning to Shred-it.  They have stopped serving even Shred-it's national account customers in Hawaii, leaving Shred-it in a lurch and causing customer confusion and concern.

23.    The purported acquisition by Access also reduces the number of shredding companies serving Hawaii from three to two (the other of which does not offer on-site document destruction, as Access does and Shred-it did in Hawaii until last week).

24.    Pursuant to Section XIII.A of the Franchise Agreement, the Franchisee Defendants agreed that certain events would entitle Shred-it to terminate the Franchise Agreement immediately upon the delivery of notice.  The events that constitute grounds for immediate termination under Section XIII.A include if the Franchisee Defendants were to abandon their business, or to transfer ownership without the consent of Shred-it.

25.    Another ground for immediate termination was if the Franchisee Defendants were to disclose Shred-it's trade secrets and other confidential information, including customer lists, in violation of Article VIII and Section 13(A)(8) of the Franchise Agreement.

26.    Pursuant to Section XII.D of the Franchise Agreement, the Franchisee Defendants agreed that Shred-it would have a "Right of First Refusal" to buy the franchised business if the Franchisee Defendants were desirous of accepting an offer from another party qualified to step into the Franchise Agreement.

27.    Pursuant to Section XII.B.5 of the Franchise Agreement, the Franchisee Defendants specifically agreed that they could not "sell trucks and/or consoles outside the system because of the 'proprietary nature' of shredders and consoles."

28.    Pursuant to Section XIV.J of the Franchise Agreement, the Franchisee Defendants further agreed as follows:  "Option to Purchase.  In the event of termination of this Agreement for any reason, including but not limited to a default under Section XIII, Franchisor shall have the right (but not the obligation) to be exercised by notice of intent to do so within thirty (30) days after the termination or expiration, to purchase Franchisee's interest in the franchise business at 'Adjusted Going Concern Value.'"

29. Pursuant to Section XXVI of the Franchise Agreement, the Franchisee Defendants agreed that Shred-it at its option could "institute an action or actions for temporary, preliminary, or permanent injunctive relief or seeking any other equitable relief against Franchisee in addition to any other rights and remedies provided herein."

**B.     Additional Post-Termination Obligations**

30. Other obligations of the Franchisee Defendants' upon termination under the Franchise Agreement are set forth elsewhere in Section X.IV, which provides:

> • Franchisee must immediately turn over to Franchisor all copies of all materials in Franchisee's possession including the operations manual, all records, files, instructions, correspondence, agreements, disclosure statements and any and all other materials relating to the operation of the Business in Franchisee's possession, and all copies thereof, and must retain no copy or record of any of the foregoing. In addition to the foregoing, Franchisee must deliver to Franchisor a complete list of all persons employed by Franchisee during the three (3) years immediately preceding termination, together with all employment files of each employee on such list.

> • Franchisee must promptly notify the appropriate telephone company and all telephone directory listing agencies of the termination or expiration of its right to use any telephone number and any regular, classified or other telephone directory listings associated with any Proprietary Marks and authorize transfer of same to or at the direction of Franchisor. Franchisee agrees to execute updated letters of direction to any telephone companies and telephone director listing agencies directing

termination and/or transfer of Franchisee's right to use any telephone number associated with the Proprietary Marks.

•   Franchisee must not directly or indirectly represent to the public or hold itself out as a present or former franchisee of the franchise business;

•   Franchisee must immediately and permanently cease to use, in any manner whatsoever, any equipment, format, confidential methods, programs, literature, procedures and techniques associated with the System, the names **SHRED-IT FRANCHISE, SHRED-IT CANADA, SHRED-IT AMERICA, SHRED-IT, SHRED-CO** and any Proprietary Marks (as defined in the Franchise Agreement), forms, slogans, signs, symbols or devices associated with the Shred-It® system.   In particular, Franchisee must cease to use, without limitation, all signs, fixtures, furniture, equipment, advertising materials or promotional displays, stationery, program material, forms and any other articles which display the Proprietary Marks associated with the Shred-It® system;

•   Franchisee must take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Marks or any other trademark, trade name or service mark of Franchisor, and Franchisee must furnish Franchisor with evidence satisfactory to Franchisor of compliance with this obligation within fifteen (15) days after termination or expiration of this Agreement;

•   Franchisee must not use any reproduction, counterfeit, copy or colorable imitation of the Proprietary Marks, either in connection with any other business or the promotion thereof, which is likely to cause confusion, mistake or deception, or which is likely to dilute Franchisor's exclusive rights in and to the Proprietary Marks, and agrees not to utilize any designation of origin or description or representation which falsely suggests or

represents an association or connection with Franchisor so as to constitute unfair competition;

- Franchisee must promptly pay all sums owing to Franchisor and its subsidiaries, affiliates and suppliers, including all damages, costs and expenses, including reasonable legal fees, incurred by Franchisor as a result of the default, together with interest;

- Franchisee must pay to Franchisor all damages, costs and expenses, including reasonable legal fees, incurred by Franchisor subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of Article XIV;

- Franchisee must comply with the non-compete obligations described in Section 15(B) of the Franchise Agreement.

## C.    Breach And Termination Of The Franchise Agreements

31.    After learning from Access what the Franchisee Defendants had done, by letter dated September 23, 2010, Shred-it advised the Franchisee Defendants that SIH, LLC was in default under the Franchise Agreement due to its various breaches of that agreement.  By that letter, Shred-it provided written notice to the Franchisee Defendants that the Franchise Agreement would be terminated, due to the Franchisee Defendants' breaches.

### D.   Franchisee Defendants' Failure To Comply Post-Termination And Other Legal Obligations

32.     As part of its September 23, 2010, letter, Shred-it reminded the Defendants of their obligations under the Franchise Agreement.  As of this date, the Franchisee Defendants have not met any of those obligations.

33.     Shred-it has no adequate remedy at law to protect its substantial business and property rights.  The damages from the Franchisee Defendants' failure to comply with the trade secret, contractual, and Lanham Act obligations are considerable and continuing and thus not capable of ascertainment at this time. The attempt by Access to interfere with the contract between Shred-it and the Franchisee Defendants, and to misappropriate and convert to its own use the goodwill, physical assets, confidential information, and trade secrets that rightfully belong to Shred-it also form a serious and imminent threat to Shred-it that will damage Shred-it in an amount that is not capable of ascertainment at this time or being remedied by monetary damages.

## COUNT I

## (FEDERAL ANTITRUST VIOLATIONS BY ACCESS AND SIH)

34.     Shred-it hereby incorporates by reference paragraphs 1 through 33 herein.

35.     The conduct of Access described above, specifically its agreement to acquire and merge its business with that of defendant SIH, constitutes a violation

of Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18, in that the effect of the proposed merger of the assets of the defendants may be substantially to lessen competition, or to tend to create a monopoly in the mobile document destruction industry in Hawaii.

36.    The combination of assets and agreement between Access and SIH also constitutes an unlawful restraint of trade under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

37.    By reason of the antitrust violations by Access and SIH, the plaintiff is threatened with loss or damage, as well as irreparable harm for which damages will be inadequate to compensate it, such that plaintiffs are entitled to bring suit under 15 U.S.C. § 26, to obtain preliminary and permanent injunctive relief, and to recover their cost of suit, including a reasonable attorney's fee.

## COUNT II

### (FALSE/MISLEADING STATEMENTS, INFRINGEMENT, UNFAIR COMPETITION UNDER FEDERAL LANHAM ACT)

38.    Shred-it hereby incorporates by reference paragraphs 1 through 37 herein.

39.    By using the Shred-it® name in a false and misleading way, and in manners and at times that are outside the rights granted in the Franchise Agreement, including by answering the telephone with the phrase "now serving Shred-it clients" and stating that the business of Shred-it (at least in Hawaii) had

been transferred to Access, and by implying that Shred-it is Canadian and thus not able or willing to service Hawaii, all of the Defendants have violated or are threatening to violate the federal law, specifically Section 32(1), 43(a), and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c) in that the Defendants will have used the Shred-it® name in ways that are likely to cause confusion or deceive as to the origin, affiliation, sponsorship, or approval of the services sold, diluting and infringing the marks of Shred-it, misrepresenting services, and competing unfairly with Shred-it.

40.    Specifically, by continuing to use and mislead the public regarding the Shred-it® marks and names through MacNaughton and Access, the Defendants are violating federal law in passing off their current business as an authorized mobile shredding business somehow affiliated with or a successor in interest to Shred-it, and by making misleading statements, including those mentioned above, the Defendants have intended to and have confused the public into thinking the Defendants and their services were affiliated with Shred-it, which they were not, or that Shred-it has gone out of business, which it has not.

41.    Pursuant to the Lanham Act, Shred-it is entitled to injunctive relief and damages caused by the violations by the Defendants, in an amount to be determined, plus treble damages, costs, disbursements, interest, and attorneys' fees.

## COUNT III

## (BREACH OF FRANCHISE AGREEMENT BY FRANCHISEE DEFENDANTS)

42.     Shred-it hereby incorporates by reference paragraphs 1 through 41 herein.

43.     The Franchisee Defendants are in breach of the Franchise Agreement as a result of their abandonment of their Shred-it franchised business, their disclosure of trade secrets to Access, their unauthorized transfer of their business to Access, their failure to allow Shred-it its right of first refusal, and their failure to allow Shred-it its right to purchase the franchised business.

44.     All of the above-mentioned breaches allow for immediate termination of the Franchise Agreement.

45.     Shred-it has no adequate remedy at law to protect its substantial business and property rights.   The damages from the Franchisee Defendants' failure to comply with their contractual obligations are considerable and continuing and thus not capable of ascertainment at this time.

46.     Shred-it is entitled to preliminary and permanent injunctive relief to prevent the harm described above.

47.     Shred-it also is entitled to costs and attorneys' fees under the Franchise Agreement.

## COUNT IV

## (BREACH OF DUTY OF GOOD FAITH BY FRANCHISEE DEFENDANTS)

48.     Shred-it hereby incorporates by reference paragraphs 1 through 47 herein.

49.     By their deception of Shred-it during the negotiations described above, while secretly arranging to sell their business assets to Assets, the Franchisee Defendants' failed to act in good faith.

50.     Shred-it has no adequate remedy at law to protect its substantial business and property rights.   The damages from the Franchisee Defendants' failure to comply with the post-termination obligations are considerable and continuing and thus not capable of ascertainment at this time.

51.     Shred-it is entitled to preliminary and permanent injunctive relief to prevent the harm described above.

52.     Shred-it also is entitled to injunctive relief, costs, and attorneys' fees.

## COUNT V

## (SPECIFIC PERFORMANCE)

53.     Shred-it hereby incorporates paragraphs 1 through 52 herein.

54.     The Defendants continue to breach the terms of Sections XII.D, XIV.J, and other above-referenced sections of the Franchise Agreement by refusing to allow Shred-it its rights thereunder.

55.     The Defendants' failures are causing irreparable harm and damage to Shred-it, causing a likelihood of confusion among members of the public, and will impair the goodwill associated with Shred-it's trademarks, trade names, and trade dress.

56.     Shred-it has no adequate remedy at law to protect its substantial business and property rights.   The damages from the Franchisee Defendants' failure to comply with the post-termination obligations are considerable and continuing and thus not capable of ascertainment at this time.

57.     Shred-it is entitled to an order directing the Franchisee Defendants to perform the contractual obligations set forth in the Franchise Agreement.

## COUNT VI

## (CONVERSION BY ACCESS AND FRANCHISEE DEFENDANTS)

58.     Shred-it hereby incorporates by reference paragraphs 1 through 57 herein.

59.     The proprietary Shred-it trucks, customer lists, and other assets of the franchised business are property of Shred-it and must be returned to Shred-it under the Franchise Agreement.

60.     By purporting to sell those assets to Access, and by Access purporting to purchase same, the defendants are converting Shred-it's tangible and intangible assets to their own unlawful use.

61.     If the Franchisee Defendants' actions are not enjoined, Shred-it will be damaged by the Franchisee Defendants' conversion of their tangible and intangible property in an amount that cannot be ascertained, thus Shred-it is entitled to injunctive relief.

## COUNT VII

## (MISAPPROPRIATION OF TRADE SECRETS BY ACCESS AND FRANCHISEE DEFENDANTS)

62.     Shred-it hereby incorporates by reference paragraphs 1 through 61 herein.

63.     Shred-it's customer lists, proprietary designs for shredding trucks, routing, marketing and sales practices, profit margins, business strategies, data compilations, and other information constitute trade secrets.

64.     In operating a Shred-it franchise, the Franchisee Defendants were exposed to and learned Shred-it's trade secrets as referenced above.

65.     Shred-it has invested significant time, money, and other resources in developing and protecting its trade secrets.  This proprietary information provides independent economic benefit from not being known to, or ascertainable by, Shred-it's competitors.

66.     Shred-it has taken reasonable steps to maintain the secrecy of its trade secrets, including but not limited to requiring employees and franchisees to sign

non-competition agreements with confidentiality agreements, as well as by limiting access, protecting computer systems with passwords, and other security policies.

67.  The defendants, through their above-described conduct, have intentionally taken and appropriated for their own use the trade secrets of Shred-it.

68.  If the Franchisee Defendants' actions are not enjoined, Shred-it will be damaged by the Defendants' misappropriation of their trade secrets in an amount to be determined, and Shred-it is entitled to injunctive relief, costs, and attorneys' fees.

## COUNT VIII

## (INTERFERENCE WITH CONTRACT BY ACCESS)

69.  Shred-it hereby incorporates by reference paragraphs 1 through 68 herein.

70.  Access has known at all relevant times that the Franchisee Defendants have been parties to the Franchise Agreement, which contains the rights and obligations of the parties thereto.

71.  Without justification, Access intentionally induced the Franchisee Defendants to sell them assets of their Shred-it business without consent of Shred-it and in derogation of Shred-it's rights of first refusal and to purchase under the Franchise Agreement.

72.     If the Franchisee Defendants' actions are not enjoined, Shred-it will be damaged by the interference with the contract between Shred-it and the Franchisee Defendants, and Shred-it is entitled to injunctive relief.

## PRAYER FOR RELIEF

Plaintiff Shred-it prays for judgment against Defendants as follows:

A.      For an order ratifying and enforcing the termination of the Franchise Agreement as of September 23, 2010;

B.      For an order for a preliminary and permanent injunction or order of specific performance against the Defendants, and their agents, servants, and employees, and all others in active concert or participation with them, enforcing all obligations under trade secrets law or contained in the Franchise Agreement, precluding interference with Shred-it's rights under the Franchise Agreement, preventing further misappropriation and conversion of property that belongs to Shred-it; more specifically, ordering the Defendants to make available to Shred-it trucks, customer lists, keys to consoles, phone numbers, leased premises, and other tangible and intangible parts of the formerly-franchised Shred-it business, so that Shred-it can continue to operate its business and service its customers;

C.      For an order for a temporary, preliminary, and permanent injunction against the Defendants, and their agents, servants, and employees, and all others in active concert or participation with them, under section 43(c)(1) of the Lanham

Act, directing the Defendants to stop unfair competition and all use of Shred-it name and trademarks in any manner;

D.      For an order for a temporary, preliminary, and permanent injunction against defendants Access and SIH and their agents, servants, employees, and all others in active concert or participation with them, under 15 U.S.C. § 26, precluding or unwinding the acquisition or merger by directing defendant Access to divest itself of the assets acquired from defendant SIH;

E.      For Shred-it's costs, disbursements, and attorneys' fees incurred in this action, as allowed by the Lanham and Clayton Acts; and

F.      For such other and further relief as the Court deems just and proper.

DATED:  Honolulu, Hawaii, September 29, 2010.


CADES SCHUTTE LLP


/s/ Milton M. Yasunaga
MILTON M. YASUNAGA
ELIJAH YIP
ALLISON MIZUO LEE
Attorneys for Plaintiff
SHRED-IT AMERICA, INC.