IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

SHRED-IT AMERICA, INC. and )     CV NO 10-00547 DAE-KSC
SHRED-IT USA, INC., )
                         )
         Plaintiffs, )
                         )
   vs. )
                         )
EDWARD MACNAUGHTON; SIH, )
LLC; ACCESS INFORMATION )
MANAGEMENT OF HAWAII, )
LLC; ROBERT EGBERT; and )
BRIGITTE EGBERT, )
                         )
        Defendants. )
_____ )

ORDER: (1) GRANTING IN PART AND DENYING IN PART ACCESS'S
MOTION TO DISMISS; (2) DISMISSING WITHOUT PREJUDICE
COUNT I OF THE SECOND AMENDED COMPLAINT;
(3) GRANTING MOTION FOR JOINDER

On May 12, 2011, the Court heard Defendant Access Information

Management of Hawaii, LLC's Motion to Dismiss Count I of Second Amended

Complaint for Failure to State Claim for Which Relief Can Be Granted ("Motion to

Dismiss," Doc. # 133) as well as Defendants Edward MacNaughton, SIH, LLC,

Robert Egbert, and Brigitte Egbert's Motion for Joinder in the Motion to Dismiss

("Motion for Joinder," Doc. # 131).  Milton M. Yasunaga, Esq., and Quentin R.

Wittrock, Esq., appeared at the hearing on behalf of Plaintiffs Shred-it America,

Inc. and Shred-it USA, Inc. (collectively, "Shred-it"); Jason H. Kim, Esq., and Thomas E. Bush, Esq., appeared at the hearing on behalf of Defendant Access Information Management of Hawaii, LLC ("Access"); Miles B. Furutani, Esq., appeared at the hearing on behalf of Defendants Edward MacNaughton, SIH, LLC, Robert Egbert, and Brigitte Egbert. After reviewing the motions and the supporting and opposing memoranda, the Court GRANTS IN PART AND DENIES IN PART Access's Motion to Dismiss (Doc. # 133), DISMISSES WITHOUT PREJUDICE Count I of the Second Amended Complaint, and GRANTS the Motion for Joinder (Doc. # 131).

BACKGROUND

The parties and the Court are all very familiar with the issues in this case. Accordingly, the Court only recites those facts that are relevant to determination of the instant motion. Shred-it America, Inc., and Shred-it USA, Inc. (collectively, "Shred-it"), operate company-owned and franchised secure document destruction businesses in various locations throughout the United States, Canada, and other parts of the world. (SAC ¶ 15.) In July 1998, Shred-it entered into a written Franchise Agreement with Edward MacNaughton ("MacNaughton"), granting him the exclusive right to operate a Shred-it business in the State of Hawaii through SIH, LLC ("SIH"). (Id. ¶ 17.) In September 2010, SIH sold the

majority of its operating assets to Access Information Management of Hawaii, LLC ("Access"). (Id. ¶ 23.) After learning of this sale, on September 24, 2010, Shred-it filed a Complaint in this Court against MacNaughton, SIH, and Access (Doc. # 1) as well as a Motion for Temporary Restraining Order and Order to Show Cause for Preliminary Injunction ("TRO Motion," Doc. # 4). On September 30, 2010, the Court heard Shred-it's TRO Motion and issued an Order requiring the parties to take various actions to maintain the status quo pending resolution of this case on the merits. (Doc. # 32.)

Shred-it filed a First Amended Complaint on September 29, 2010. ("FAC," Doc. # 20.) On October 6, 2010, Shred-it filed a purported Second Amended Complaint (Doc. # 36), which U.S. Magistrate Judge Kevin S.C. Chang struck on November 16, 2010 pursuant to Federal Rules of Civil Procedure 15 (Doc. # 93).

On January 12, 2011, with leave of the Court (Docs. ## 122, 127), Shred-it filed a Second Amended Complaint against MacNaughton, SIH, Access, Robert Egbert, and Brigitte Egbert. ("SAC," Doc. # 126.) Shred-it's Second Amended Complaint alleges Counts: (Count I) federal antitrust violations by Access and SIH (id. ¶¶ 49–57); (Count II) false/misleading statements, infringement, unfair competition under federal Lanham Act (id. ¶¶ 58–61);

(Count III) unfair competition (id. ¶¶ 62–66); (Count IV) deceptive trade practices (id. ¶¶ 67–72); (Count V) breach of the Franchise Agreement by MacNaughton and SIH (id. ¶¶ 73–78); (Count VI) breach of duty of good faith by MacNaughton and SIH (id. ¶¶ 79–83); (Count VII) specific performance requiring MacNaughton and SIH to perform the contractual obligations set forth in the Franchise Agreement (id. ¶¶ 84–88); (Count VIII) conversion of Shred-it's assets by MacNaughton, SIH, and Access (id. ¶¶ 89–92); (Count IX) misappropriation of trade secrets by MacNaughton, SIH, and Access (id. ¶¶ 93–99); (Count X) interference with contract by Access (id. ¶¶ 100–103); (Count XI) constructive trust, equitable lien, fraudulent transfer, injunction to prevent dissipation of proceeds, unjust enrichment (id. ¶¶ 104–107).

On January 27, 2011, Access filed a Motion to Dismiss Count I of Second Amended Complaint for Failure to State a Claim for Which Relief Can Be Granted ("Motion to Dismiss"). ("MTD," Doc. # 133.) Access also requests that the Court decline to assert supplemental jurisdiction over Shred-it's state law claims, namely Counts III through XI of the Second Amended Complaint. On January 26, 2011, MacNaughton, SIH, Robert Egbert, and Brigitte Egbert joined the Motion to Dismiss. (Docs. ## 131, 137). Shred-it filed an Opposition to the

Motion to Dismiss on April 4, 2011.[1]  ("Opp'n," Doc. # 147.)  Access filed a Reply

on April 28, 2011.  ("Reply," Doc. # 154.)

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a

claim upon which relief can be granted.  Review is limited to the contents of the

complaint.  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir.

1994).  A complaint may be dismissed as a matter of law for one of two reasons:

"(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable

legal claim."  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir.

1984) (citation omitted).  Allegations of fact in the complaint must be taken as true

and construed in the light most favorable to the plaintiff.  See Livid Holdings Ltd.

v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6)

motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In providing grounds for relief, however, a plaintiff must do more than recite the

formulaic elements of a cause of action.  See id. at 556–57; see also McGlinchy v.

---

[1] On May 5, 2011, Shred-it filed a Listing of Additional Authority in Support
of its Opposition.  (Doc. # 156.)

Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted). Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief. See Twombly, 550 U.S. at 570. A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief. Id. at 586. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558 (citation omitted). If a court dismisses the complaint or

portions thereof, it must consider whether to grant leave to amend. <u>Lopez v.</u>

<u>Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be

granted "if it appears at all possible that the plaintiff can correct the defect")

(internal quotations and citations omitted).

DISCUSSION

For the reasons set forth below, the Court concludes that Shred-it's

antitrust claim must be dismissed for failure to allege a legally cognizable relevant

market. Additionally, because Access's request to dismiss Shred-it's state law

claims is somewhat premature, the Court denies it without prejudice.

I.     <u>Count I: Shred-it's Antitrust Claim</u>

Shred-it alleges that the September 2010 sale of SIH's assets to

Access violates Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2,

and Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18. (SAC ¶¶ 49–57.)

Shred-it seeks relief for these violations pursuant to Sections 4 and 16 of the

Clayton Act, 15 U.S.C. §§ 15, 26. (SAC ¶ 57.)

Section 1 of the Sherman Act prohibits "[e]very contract, combination

in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce

among the several States, or with foreign nations." 15 U.S.C. § 1. To state a claim

under Section 1, "'claimants must plead not just ultimate facts (such as a

7

conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce . . . (3) which actually injures competition.'" William O. Gilley Enters., Inc. v. Atlantic Richfield Co., 588 F.3d 659, 669 (9th Cir. 2009) (per curiam) (quoting Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008)); see also Coal. for ICANN Transparency, Inc. v. VeriSign, Inc., 611 F.3d 495, 501–02 (9th Cir. 2010) (same).

Section 2 of the Sherman Act makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2. Monopolization and attempted monopolization are the two traditional claims asserted under Section 2. To state a claim for monopolization, the plaintiff must sufficiently allege: "'(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" John Doe 1 v. Abbott Labs., 571 F.3d 930, 933 n.3 (9th Cir. 2009) (quoting Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 481 (1992)); Alaska

Airlines v. United Airlines, Inc., 948 F.2d 536, 540–41 (9th Cir. 1991) (same); see also MetroNet Servs. Corp. v. Qwest Corp., 383 F.3d 1124, 1130 (9th Cir. 2004) (listing the elements of a monopolization claim).

To state a claim for attempted monopolization, the plaintiff must allege: "'(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" Cascade Health Solutions v. PeaceHealth, 515 F.3d 883, 893 (9th Cir. 2008) (quoting Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993)); see also VeriSign, 611 F.3d at 506 (same).

Sections 1 and 2 of the Sherman Act thus "focus on different problems." See Alaska Airlines v. United Airlines, Inc., 948 F.2d 536, 540–41 (9th Cir. 1991). Whereas "concerted conduct is subject to sanction [under Section 1] if it merely restrains trade, unilateral conduct is subject to sanction [under Section 2] only if it either actually monopolizes or threatens monopolization." Id. at 541 (citing Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 767–69 (1984)); see also Am. Needle, Inc. v. Nat'l Football League, 130 S. Ct. 2201, 2208–09 (2010) (stating that although Section 1 applies only to concerted action that restrains trade, Section 2 covers both concerted and

independent action, but only if that action monopolizes or threatens actual

monopolization, a category which is narrower than restraint of trade).

Finally, Section 7 of the Clayton Act forbids mergers whose effect

"may be substantially to lessen competition, or to tend to create a monopoly."  15

U.S.C. § 18.  Section 7 is a "prophylactic measure," Brunswick Corp. v. Pueblo

Bowl-O-Mat, Inc., 429 U.S. 477, 485 (1977), which proscribes "[m]ergers with a

probable anticompetitive effect," Brown Shoe Co. v. United States, 370 U.S. 294,

323 (1962).

Regardless of the provision purportedly violated, an antitrust plaintiff

must demonstrate that the injury in question is "injury of the type the antitrust laws

were intended to prevent."[2] Brunswick, 429 U.S. at 489.  Indeed, the antitrust laws

"were enacted for 'the protection of competition, not competitors.'" Id. at 488

---

[2] This is different from antitrust standing.  See Cargill, Inc. v. Monfort of
Colo., Inc., 479 U.S. 104, 110–11 nn. 5–6 (1986) (noting that antitrust injury is
necessary, but not always sufficient, to establish standing under Section 4 and that
the standing analysis under Section 16 may differ from that for Section 4); see also
Associated Gen. Contractors of Cal., Inc. v. Cal. State Counsel of Carpenters, 459
U.S. 519, 535–46 (1983) (articulating factors that courts should consider when
determining whether a plaintiff has standing under Section 4); Lucas Auto. Eng'g,
Inc. v. Bridgestone/Firestone, Inc. (Lucas I), 140 F.3d 1228, 1232–37 (9th Cir.
1998) (examining whether a plaintiff had standing to assert claims for damages and
injunctive relief under Sections 4 and 16 of the Clayton Act); Amarel v. Connell,
102 F.3d 1494, 1506–07 (9th Cir. 1996) (summarizing the factors relevant to
determine whether a plaintiff has standing to pursue a damages claim under
Section 4).

(quoting Brown, 370 U.S. at 320); see also Cascade Health Solutions, 515 F.3d at 501–02 (recognizing the Supreme Court's "long and consistent adherence to the principle that the antitrust laws protect the process of competition, and not the pursuits of any particular competitor").

A plaintiff seeking damages pursuant to Section 4 of the Clayton Act must show causal antitrust injury, and to obtain injunctive relief pursuant to Section 16 of the Clayton Act, a plaintiff must allege threatened antitrust injury.[3] Cargill, 479 U.S. at 109–13. The purpose of the antitrust injury requirement is to "ensure[] that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place, and it prevents losses that stem from competition from supporting suits by private plaintiffs for either damages or equitable relief." Atlantic Richfield Co. v. USA Petroleum, Inc., 495 U.S. 328, 342 (1990). As such, "[t]o show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior [because] it is inimical to the antitrust laws to award damages for losses

---

[3] Section 4 of the Clayton Act provides treble damages to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. Section 16 of the Clayton Act provides that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26.

stemming from acts that do not hurt competition." Rebel Oil Co., Inc. v. Atlantic Richfield Co., 51 F.3d 1421, 1433 (9th Cir. 1995) (citing Atlantic Richfield, 495 U.S. at 334); see also Cascade Health Solutions, 515 F.3d at 902 ("'Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.'") (quoting Brunswick, 429 U.S. at 489).

       In addition to antitrust injury, antitrust plaintiffs must also properly allege a relevant market. See Brown Shoe, 370 U.S. at 324–25, 334–35 (concluding that defining the relevant product and geographic markets within which the competitive effects of the transaction are to be assessed is a "necessary predicate" to finding anticompetitive effect for a Section 7 claim); Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1044 (9th Cir. 2008) (finding that to state a claim under either Section 1 or Section 2 of the Sherman Act, the plaintiff must sufficiently allege a relevant market); Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc. (Lucas II), 275 F.3d 762, 766 (9th Cir. 2001) (stating that in a case brought under Section 7 of the Clayton Act, "the relevant market

must be defined in order to evaluate the competitive consequences of an alleged

restraint of trade") (citations omitted).

The Ninth Circuit recently addressed the legal principles that govern

definition of a relevant market, and it reaffirmed that a complaint may be dismissed

under Rule 12(b)(6) if its relevant market definition is "facially unsustainable."

Newcal Indus., 513 F.3d at 1045 (citing Queen City Pizza, Inc. v. Domino's Pizza,

Inc., 124 F.3d 430, 436–37 (3d Cir. 1997)).  The relevant market includes both the

product market and the geographic market.[4]  Brown Shoe, 370 U.S. at 324; Newcal

Indus., 513 F.3d at 1045 n.4.  As to the product market, it must "encompass the

product at issue as well as all economic substitutes for the product."  Newcal

Indus., 513 F.3d at 1045 (citing Brown Shoe, 370 U.S. at 325).  It must therefore

include "the group of sellers or producers who have the 'actual or potential ability

to deprive each other of significant levels of business.'"  Forsyth v. Humana, Inc.,

114 F.3d 1467, 1476 (9th Cir. 1997) (quoting Thurman Indus., Inc. v. Pay 'N Pak

Stores, Inc., 875 F.2d 1369, 1374 (9th Cir. 1989)); see also Brown Shoe, 370 U.S.

at 325 ("The outer boundaries of a product market are determined by the

reasonable interchangeability of use or the cross-elasticity of demand between the

---

[4] Because Access does not challenge Shred-it's alleged geographic market,
the Court only addresses its asserted product market.

13

product itself and substitutes for it."). "In limited settings, however, the relevant product market may be narrowed beyond the boundaries of physical interchangeability and cross-price elasticity to account for identifiable submarkets or product clusters." Thurman Indus., 875 F.2d at 1374 (citation omitted). To establish the existence of a legally cognizable submarket, "the plaintiff must be able to show (but need not necessarily establish in the complaint) that the alleged submarket is economically distinct from the general product market." Newcal Indus., 513 F.3d at 1045; see also Brown Shoe, 370 U.S. at 325 (listing several "practical indicia" of an economically distinct submarket).

Here, contrary to the abundant weight of authority, Shred-it devoted merely seven words of its thirty-two page complaint to defining the relevant market. Shred-it asserts that the relevant market is the "mobile, on-site document destruction industry in Hawaii" (SAC ¶ 50), but the complaint is utterly devoid of any explanation or elaboration to support this contention. For instance, the complaint does not contain any allegations concerning economic substitutes for Shred-it's proposed product market, and it is entirely unclear to the Court whether Shred-it is attempting to establish a submarket for its product. Nor is there any allegation to explain why Shred-it defined the relevant market in the way that it did.

In its opposition, Shred-it argues that if Access "desires to test the accuracy of the relevant market pleaded by Shred-it, that test should be conducted at summary judgment or trial, and not on a motion to dismiss." (Opp'n at 21.) Although the validity of the relevant market is "typically a factual element rather than a legal element," there is no per se prohibition against dismissal of antitrust claims for failure to plead a relevant market. Newcal Indus., 513 F.3d at 1045. Indeed, in Newcal Industries, the Ninth Circuit cited with approval Queen City Pizza, in which the Third Circuit opined:

> Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.

Queen City Pizza, 124 F.3d at 436–37. Moreover, even before Twombly and Iqbal, in a case involving an alleged Sherman Act violation, the Supreme Court acknowledged that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." Associated Gen. Contractors, 459 U.S. at 528 n.17; see also Twombly, 550 U.S. at 558 ("[I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery . . . , but quite another to forget that proceeding

to antitrust discovery can be expensive."); <u>Kendall</u>, 518 F.3d at 1046–47

(concluding that the Supreme Court clarified the Sherman Act pleading

requirements in <u>Twombly</u> "because discovery in antitrust cases frequently causes

substantial expenditures and gives the plaintiff the opportunity to extort large

settlements even where he does not have much of a case") (citing <u>Twombly</u>, 550

U.S. at 558–59).

      Shred-it's assertion that its alleged relevant market can be tested only

with a motion for summary judgment or at trial is thus simply incorrect.  Because

Shred-it has provided nothing more than the legal conclusion that the relevant

market is the "mobile, on-site document destruction industry in Hawaii," it has not

alleged a legally cognizable relevant market and its antitrust claim must be

dismissed.  Accordingly, the Court GRANTS Access's Motion to Dismiss Count I

of the Second Amended Complaint.[5]

      The Court recognizes, however, that it may be possible for Shred-it to

state an antitrust claim if provided the opportunity to amend its complaint.

---

[5] Because of this determination, the Court need not reach the remainder of
Access's arguments, including its contention that Shred-it has not sufficiently
alleged antitrust injury and its assertion that the <u>Copperweld</u> doctrine bars Shred-
it's Section 1 claim except to the extent that it challenges the asset acquisition
itself.  Although the Court does not address these arguments, it is nonetheless
concerned by the vagueness of Shred-it's alleged antitrust injury.

Accordingly, Count I of the Second Amended Complaint is DISMISSED

WITHOUT PREJUDICE with leave to amend no later than 30 days from the filing

of this Order.  Failure to file an amended complaint and to cure the pleading

deficiencies will result in dismissal of Shred-it's antitrust claim with prejudice.

II.     Counts III through XI: Shred-it's State Law Claims

        Counts III through XI of Shred-it's Second Amended Complaint all

allege state law claims.  The Court has federal question jurisdiction over Shred-it's

Sherman Act, Clayton Act, and Lanham Act claims, and the parties do not dispute

that the Court has supplemental jurisdiction over Shred-it's state law claims

pursuant to 28 U.S.C. § 1367(a).[6]  Access, however, urges the Court to decline to

exercise supplemental jurisdiction over these claims, and argues that "exceptional

circumstances" exist, pursuant to 28 U.S.C. § 1367(c)(4), which justify dismissal

without prejudice of Counts III through XI of Shred-it's Second Amended

Complaint.[7]

---

[6] Shred-it initially claimed that the Court had diversity jurisdiction over the
instant lawsuit, but it subsequently abandoned this basis for subject matter
jurisdiction.  (SAC ¶ 12.)

[7] Access also argues that Shred-it's state law claims raise novel and complex
issues under Hawaii's Franchise Investment Law and that Shred-it's state law
claims predominate over its federal claims, such that dismissal is warranted under
28 U.S.C. § 1367(c)(1), (2).  (MTD at 18; Reply at 10–11.)  The Court has not thus
far been required to examine the merits of Shred-it's Second Amended Complaint
with sufficient specificity to make a determination on this argument.  Access's

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over state law claims if:

(1)     the claim[s] raise[] a novel or complex issue of State law,

(2)     the claim[s] substantially predominate[] over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)–(4).

The Ninth Circuit has specified that "declining jurisdiction [under Section 1367(c)(4)] should be the exception, rather than the rule." Exec. Software N. Am., Inc. v. U.S. Dist. Court, 24 F.3d 1545, 1558 (9th Cir. 1994), overruled in part on other grounds by Cal. Dep't of Water Res. v. Powerex Corp., 533 F.3d 1087 (9th Cir. 2008); see also Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998) (citing Executive Software for this proposition). When determining whether exceptional circumstances exist, the Court must: (1) articulate why the circumstances are sufficiently exceptional for declining jurisdiction; and (2) inquire into whether the Gibbs values of "economy,

_____

contentions on this point are therefore premature.

convenience, fairness, and comity" provide compelling reasons for declining

jurisdiction in such circumstances.  Exec. Software, 24 F.3d at 1557–58 (citing

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–27 (1966)); see also

San Pedro Hotel Co. v. City of L.A., 159 F.3d 470 (9th Cir. 1998) (acknowledging

that Executive Software requires district courts to articulate why the circumstances

are exceptional before declining jurisdiction pursuant to 28 U.S.C. § 1367(c)(4)).

Access asserts that exceptional circumstances exist here because this

lawsuit overlaps with two pending Hawaii state court proceedings.  As set forth in

this Court's December 27, 2010 Order (Cv. No. 10-00621, Doc. # 34), this action

is one of three related cases involving similar parties and issues.  On September 22,

2010, SIH and Access filed suit in Hawaii state court against Shred-it, seeking a

determination that the Franchise Agreement between SIH and Shred-it is void as

violative of Hawaii law.  (Cv. No. 10-00614, Doc. # 1-1.)  Access and SIH

subsequently filed a first amended complaint in this state court action, joining

MacNaughton as a plaintiff and adding state law claims for unfair competition,

deceptive trade practices constituting unfair competition, intentional interference

with prospective economic advantage, and conversion/trespass to chattels.  (Cv.

No. 10-00614, Doc. # 1-2.)  On October 20, 2010, Shred-it removed the action to

this Court (Cv. No. 10-00614, Doc. # 1), and MacNaughton, SIH, and Access

dismissed the suit without prejudice on October 21, 2010 (Cv. No. 10-00614, Doc. # 4).

On the same day, rather than refile the lawsuit they had voluntarily dismissed, MacNaughton, SIH, and Access filed two lawsuits in Hawaii state court, which essentially reasserted their previous claims. First, MacNaughton, SIH, and Access filed a lawsuit against Shred-it, seeking a determination that the Franchise Agreement is void as violative of Hawaii state law. (Cv. No. 10-00621, Doc. # 1-1.) On October 25, 2010, Shred-it removed the action to federal court (Cv. No. 10-00621, Doc. # 1), and on December 27, 2010, this Court remanded it to Hawaii state court (Cv. No. 10-00621, Doc. # 34). Second, Access filed a lawsuit against Shred-it, alleging claims for unfair competition, unfair and deceptive trade practices, intentional interference with prospective economic advantage, and conversion/trespass to chattels. (Cv. No. 10-00622, Doc. # 1-1.) Shred-it removed the action to federal court on October 25, 2010 (Cv. No. 10-00622, Doc. #1), and on November 5, 2010, U.S. District Judge J. Michael Seabright remanded it to Hawaii state court (Cv. No. 10-00622, Doc. # 20).

Meanwhile, on September 24, 2010, Shred-it filed the instant action against MacNaughton, SIH, and Access.[8] (Doc. # 1.) Shred-it's state law claims include unfair competition, deceptive trade practices, conversion, misappropriation of trade secrets, interference with contract, and breach of the Franchise Agreement. (SAC ¶¶ 62–107.)

According to Access, the issues presented in the two state court lawsuits are "mirror images" of Shred-it's state law claims in the instant federal action. (MTD at 16–17.) Whereas in Hawaii state court, MacNaughton, SIH, and Access seek a declaration that the Franchise Agreement is void as violative of Hawaii law, in this action, Shred-it seeks to enforce the Franchise Agreement. Additionally, Access argues that it "make[s] little sense" for this Court to adjudicate Shred-it's unfair competition and deceptive trade practices claims because Access asserts those same claims against Shred-it in state court. (Id.) Access therefore contends that if this Court were to retain jurisdiction over Shred-it's state law claims, it would "waste judicial resources and create the risk of inconsistent adjudications." (Id. at 17.)

---

[8] In its Second Amended Complaint, filed January 12, 2011, Shred-it added Robert Egbert and Brigitte Egbert as defendants.

Shred-it, in turn, asserts that although the three actions between the parties "arguably have the same set of operative facts," the lawsuits all involve different parties and different claims, such that they are not sufficiently duplicative to constitute an "exceptional circumstance." (Opp'n at 31–32.) Shred-it also argues that because this Court would still have to adjudicate Shred-it's federal claims, declining to assert supplemental jurisdiction over the state law claims would result in "duplicative litigation, wasted judicial resources, needless expenditures, conflicting case schedules, and the possibility of inconsistent verdicts." (Opp'n at 32–33.)

Upon review, and considering the parties' arguments at the hearing on this matter, the Court concludes that it is currently premature to reach a determination on this issue. Accordingly, the Court DENIES WITHOUT PREJUDICE Access's Motion to Dismiss Counts III through XI of the Second Amended Complaint. Access shall have leave to refile its motion when circumstances are more appropriate.

<u>CONCLUSION</u>

For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART Access's Motion to Dismiss (Doc. # 133), DISMISSES

WITHOUT PREJUDICE Count I of Shred-it's Second Amended Complaint, and

GRANTS the Motion for Joinder (Doc. # 131).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 13, 2011.



_____
David Alan Ezra
United States District Judge

Shred-it America, Inc. v. MacNaughton, et al., Cv. No. 10-00547 DAE-KSC; ORDER: (1) GRANTING IN PART AND DENYING IN PART ACCESS'S MOTION TO DISMISS; (2) DISMISSING WITHOUT PREJUDICE COUNT I OF THE SECOND AMENDED COMPLAINT; (3) GRANTING MOTION FOR JOINDER